MADISON LUMBER CO. v. FEDERAL
SURETY CO. ET AL.

(May 5, 1930. Opinion and Decree.)
(May 19, 1930. Rehearing Refused.)

Deutsch & Kerrigan, of New Orleans, attorneys for plaintiff, appellee.

Lemle, Moreno & Lemle, of New Orleans, attorneys for Federal Surety Co., defendant, appellant.

JANVIER, J. Plaintiff, Dendinger, Inc., is in the business of furnishing lumber and building supplies and materials and operates under the trade name "Madison Lumber Company."

William C. Durning is a contractor.

Mrs. DeJean is the owner of certain premises, for whom Durning undertook to construct certain work, and Federal Surety Company is surety on the contractor's bond furnished by Durning.

Plaintiff seeks to recover from the contractor and/or the surety $2,803.13, claiming this to be the balance due on a bill for lumber and materials used in the construction of the work for Mrs. DeJean. Plaintiff also asks for attorney's fees at 10 per cent. on the total amount of the claim, which attorney's fees are provided for under Act 225 of 1918, and plaintiff also prays for the recognition of its lien on the premises of Mrs. DeJean.

Judgment was rendered against Durning and against the surety company, as prayed for, subject, however, to a credit in favor of the surety company for $1,561.16, which the surety company admitted was due and which it paid. Claims for certain other credits originally set up have been abandoned, and at the present time the only matters remaining in controversy are:

First, that credit for an additional payment of $324.42 should have been allowed.

Second, that credit for $89 should have been allowed as the cost to the contractor of correcting certain defects in millwork sold and delivered by the plaintiff, and

Third, that the attorney's fees should not have been awarded.

Since the second item, to-wit, the claim for a credit of $89, the alleged cost of correcting defects in the materials sold, is most easily disposed of, we will consider that item first.

We find in the record no definite proof of this claim. There is, it is true, certain testimony to the effect that some of the millwork did not fit, and that certain expenses were necessitated in order to alter it, but the record falls far short of convincing us that the amount claimed on this item is correct, or that any particular amount should be allowed. Of course, the burden of proof is on the defendants to sustain their contention that this credit should be allowed and, in the absence of proof sufficient to form the basis of a judgment in their favor, this claim must be disallowed.

The claim for credit for an additional payment of $324.42 is, on the other hand, in our opinion, well founded. The record shows that materials totaling $1,513.80 had been delivered for the DeJean job, and that plaintiff had been in communication with Durning, the contractor, with reference to payment therefor, and that Durning had telephoned to a Mr. Wild, who seems to be a solicitor, salesman, and collector for plaintiff, that if he, Wild, would call, a check would be forthcoming. Thereupon Wild called upon Durning and Durning produced a bill for $1,513.80 covering materials sold and delivered for the DeJean job, which bill had been mailed him by plaintiff, and he also produced and handed to Wild a check for that exact amount.

Thereupon Wild took the check, receipted the bill to which we have referred, and handed it back to Durning. However, when Wild returned to the office of plaintiff, it is alleged that the bookkeeper discovered that Durning had been indebted to plaintiff on old accounts in the sum of $324.42, and thereupon, according to the testimony of some of the plaintiff's witnesses, a portion of the check given in payment for the DeJean bill was imputed to the payment of the old account and, thus, the DeJean account was left showing a balance due amounting to $324.42. We have no difficulty whatever in reaching the conclusion that, when Durning handed Mr. Wild a check for $1,513.80 and Wild received it and receipted the bill for the DeJean materials, that that amounted to an imputation of the entire amount of the check to the DeJean account, and there is little dispute that, had the matter ended there, the imputation should and would have been made entirely to that account. Plaintiff, however, attempts to show that, with the consent of Durning, the original imputation was changed. In an effort to show this, Wild testifies that he went back later and advised Durning of the facts to which we have referred, and that Durning agreed to the change in the imputation of

the payment. Durning positively denies this.

Since there is no doubt of the original imputation, we are of the opinion that the burden of proving the change rests upon the plaintiff company, and we are further of the opinion that the preponderance of the evidence does not sustain the contention that the change in the imputation was agreed to.

Plaintiff also relies upon that fact that later certain statements were sent to Durning, and that these statements showed that the change in the imputation had been made and that Durning accepted them without protest. We have examined one statement relied upon by plaintiff and confess our utter inability to interpret it as showing that a part of the payment to which we have referred was imputed to the payment of another account. We are quite certain that no one, not an expert bookkeeper or accountant, could interpret the statement referred to as showing the change in the imputation of the original payment, and we do not think that there is anything in it to put Durning on notice that such a change had been made.

Since we have come to the conclusion that the payment should have been imputed entirely to the DeJean account, we find it unnecessary to discuss the question of whether or not plaintiff had knowledge as to the source from which the funds were derived. But we say again, as we have often said before, that we find it very difficult to believe that a furnisher of materials, constantly calling upon the contractor for money, and whose collector, as was shown here, called at the work two or three times each day, had no knowledge of the fact that so large a sum as $1,500 had been derived from the owner of the work.

The third item in dispute, to-wit, the claim for attorney's fees at 10 per cent., must fall by reason of the fact that a part of the claim of plaintiff is disallowed by us. The act under which this claim is made, to-wit, No. 225 of 1918, provides "that the said ten per cent. attorneys fees shall only be recoverable where the full amount claimed by the suitor is recovered." We are, therefore, of the opinion that the judgment appealed from should be amended by reducing the amount thereof by the sum of $324.42, and by disallowing the attorney's fees.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended, so as to read as follows:

"It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Madison Lumber Company, and against the said defendants, Federal Surety Company and William C. Durning, jointly, severally and in solido, in the full sum of $2,803.13, with 5 per cent. interest thereon from September 12, 1928, until paid and for all costs. It is further ordered, adjudged and decreed that the Federal Surety Company be credited with the sum of $1,561.16 paid February 21, 1929, and that both defendants be credited with the sum of $324.42 paid July 12, 1928, both credits to apply on this judgment."

As thus amended, the judgment is affirmed.

ON APPLICATION FOR REHEARING

Our attention is called to the fact that in the decree rendered by us we inadvertently allowed defendant, William C. Durning, credit for $324.42, thus amending the judgment in his favor, though he had not appealed.

The decree is accordingly amended so as to read as follows:

"It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Madison Lumber Company, and against the said defendants, Federal Surety Company and William C. Durning, jointly, severally and in solido, in the full sum of $2,803.13, with 5% interest thereon from September 12, 1928, until paid, and for all costs. It is further ordered, adjudged and decreed that the Federal Surety Company be credited with the sum of $1,561.16 paid February 21, 1929, and with the sum of $324.42 paid July 12, 1928, both credits to apply on this judgment.

"As thus amended the judgment is affirmed."

The rehearing prayed for is refused.